IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

YODER & FREY AUCTIONEERS, INC.,
et al.,

                Plaintiff,           Case No. 3:10 CV 1590

    -vs-

                                        MEMORANDUM OPINION

EQUIPMENTFACTS, LLC,

                Defendant.

KATZ, J.

This matter is before the Court on Defendant EquipmentFacts, LLC's Motion to Dismiss the first claim of the First Amended Complaint (Doc. No. 23), the Opposition of Plaintiffs Yoder & Frey Auctioneer's, Inc. ("Yoder") and RealTimeBid.Com, LLC ("RTB") (Doc. No. 30), and Defendant's Reply (Doc. No. 31). The Court notes federal question jurisdiction under 28 U.S.C. §1331, supplemental jurisdiction under 28 U.S.C. §1367, and proper venue under 28 U.S.C. §1391. For the reasons stated below, the motion will be denied.

**I. BACKGROUND**

The following facts are taken from the First Amended Complaint (Doc. No. 17).

Yoder is an Ohio auction company that derives a substantial portion of its business from a yearly heavy equipment auction conducted in Florida. Though the auction is conducted in person and in the presence of the equipment, Yoder has also provided online services to its buyers and sellers for several years.

Until January 2008, Yoder had contracted with Defendant (a New Jersey LLC) to run the online bidding service. After terminating the relationship, Yoder hired RTB to maintain the online

auction services for the 2010 auction. Online access to the 2010 auction was not open to the public; a potential participant must apply and satisfy both Plaintiffs.

Plaintiffs allege that Defendant obtained unauthorized access to the 2010 online auction system, using an administrative identification and password, and posted negative comments on the system chat board. Later, Defendant falsely registered for the online auction using the name of a Yoder customer who was registered for the auction in general. Further, Plaintiffs allege, Defendant used this fraudulent registration to place bids in the auction, placed the winning bid on over one million dollars worth of equipment, and failed to pay on those winning bids.

Plaintiffs brought this suit because of the incident, raising violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030, common law fraud and trespass to chattels, and breach of contract.[1] Defendant moved for dismissal of the first claim of Plaintiffs' First Amended Complaint, the CFAA count and also the only federal law count.[2]

## II. MOTION TO DISMISS STANDARD

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Courts must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss. *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007); *Thurman v. Pfizer, Inc*., 484 F.3d 855, 859 (6th Cir. 2007). To survive a motion to

---

[1] The breach of contract claim, relating to the failure to pay on the fraudulent bids, was added in the First Amended Complaint.

[2] Defendant suggests that if the Court dismisses the CFAA count, the Court should decline continued supplemental jurisdiction over the remaining state law claims. Plaintiffs, perhaps realizing that the parties are diverse, asked for leave to amend their complaint in the case the Court dismisses the CFAA count.

dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, *Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Twombly*, 550 U.S. at 555 (stating that the complaint must contain something more than "a formulaic recitation of the elements of a cause of action"). A complaint must state sufficient facts to, when accepted as true, state a claim "that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

In conjunction with this standard, the Court is cognizant that Fed. R. Civ. P. 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (*citing Twombly*, 550 U.S. at 596); *see also Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 295-96 (6th Cir 2008). The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## III. ANALYSIS

In its Motion to Dismiss, Defendant raises only Plaintiffs' allegation of "loss" under the CFAA. With limited exceptions, any civil suit under this primarily criminal statute has to prove "loss" as defined in the statute of at least $5000. 18 U.S.C. §1030(g), (c)(4)(A)(i)(I) (civil suit authorized under subsection (g) if one of the factors in subsection (c)(4)(A)(i)(I)-(V) satisfied). Further, Defendant contests only whether Plaintiffs allege a "loss" at all without attacking the allegation as to amount.

The CFAA defines "loss" as " any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or *other consequential damages incurred because of interruption of service*." 18 U.S.C. §1030(e)(11) (emphasis added). Plaintiffs allege such consequential damages due to lost commissions from the failed auction on the items for which Defendant allegedly submitted the winning bid and the cost of making whole the sellers of those items.

The parties disagree over whether "interruption of service" only covers large scale sabotage, such as crashing a website or a computer, or whether it can include the smaller scale sabotage at issue here, where Defendant allegedly assumed the identity of another in order to cast fraudulent bids at a site devoted to an auction.[3] The statute does not define "interruption of service." Case law provides little further hint, essentially leaving the Court with a question of first impression.

---

[3] If Defendant objected to the type, rather than scale, of the sabotage alleged, the Court would have to consider whether Plaintiffs' auction website was in service if Defendants submitted fraudulent winning bids for every item in the auction.

Defendant relies most heavily on a case decided in this district by Judge Zouhary which found no loss. *Am. Family Mut. Ins. Co. v. Rickman*, 554 F.Supp.2d 766 (N.D. Ohio 2008). It claims that case is "virtually identical" to this case. (Doc. No. 23-1 at 1). Because that case involved misappropriation of information by a departing employee, rather than fraudulent access to a commercial website, the Court is not convinced. *Id*. at 771. While Judge Zouhary held that the CFAA requires "interruption of service" for consequential "losses," his holding addressed the absence of such assertion, not the parameters of "interruption of service."

Almost every other case Defendant relies upon to show that the allegations do not involve an "interruption of service" also involves misappropriation of information, rather than disruption of operations. *See ReMedPar, Inc. v. AllParts Medical, LLC*, 683 F.Supp.2d 605, 614 (M.D. Tenn. 2010) (plaintiff "has not alleged any disruption in its service"); *Oil States Skagit Smatco, LLC v. Dupre*, 2010 WL 2605748 at *3 (E.D. La.) ("the losses alleged by the plaintiffs are not revenue lost because the plaintiffs' computers were damaged or inoperable, but were incurred due to the manner in which the defendants used the data afterwards"); *Andritz, Inc. v. S. Maint. Contractor, LLC*, 626 F.Supp.2d 1264, 1266 (M.D. Ga. 2009) (misappropriation of "Plaintiff's trade secrets and proprietary information" rather than "impairment to its computer system"); *Jet One Group, Inc. v. Halcyon Jet Holdings, Inc.*, 2009 WL 2524864 at *7 (E.D.N.Y) ("Defendants obtained 'confidential and proprietary information' and used such information to Plaintiff's detriment-while not connecting this detriment to any 'impairment' to its computer system"); *ES & H, Inc. v. Allied Safety Consultants, Inc.*, 2009 WL 2996340 at *4 (E.D. Tenn.) ("Plaintiff has not alleged any disruption in its service"); *Cohen v. Gulfstream Training Acad., Inc.*, 2008 WL 961472 at *3-4 (S.D. Fla.) ("copying of files for ... use to begin a competing company ... did not

5

cause an interruption of service"); *Cenveo Corp. v. CelumSolutions Software GMBH & Co.*, 504 F.Supp.2d 574, 581 (D. Minn. 2007) ("the Amended Complaint is devoid of allegations that Wilker's access caused an interruption in service"); *L-3 Commc'ns Westwood Corp. v. Robicharux*, 2007 WL 756528 at *4 (E.D. La.) ("There is no allegation that there was ... an interruption of service in this case"). Defendant also thinks that cases stating that destruction of data (again, by exiting employees) satisfies "loss" imply that the alleged actions in this case did not cause a "loss." *See Lasco Foods, Inc. v. Hall and Shaw Sales, Marketing & Consulting, LLC*, 600 F.Supp.2d 1045 (E.D. Mo. 2009); *B & B Microscopes v. Armogida*, 532 F. Supp.2d 744 (W.D. Pa. 2007). Not only are those cases factually distinct because they involve former employees and misappropriation, they only speak to the effect of deletion, not disruption.

Because Defendant's case law fails to demonstrate to the Court anything related to the type of disruption Plaintiffs allege, the Court will look for guidance to the legislative history of 18 U.S.C. §1030(e)(11). In describing the definition of "loss" for the CFAA, the record specifically invokes "responding to a computer hacker" as the proper scope of the definition. 147 Cong. Rec. S10990-02, 20 (2001). Black's Law Dictionary 780 (9th ed. 2009) defines "to hack" as "to surreptitiously break into the computer, network, servers, or database of another person or organization." Here, Plaintiffs allege that Defendant surreptitiously (by pretending to be a particular Yoder customer) gained access to the auction website.

Given the legislative history, the language of the statute, and the paucity of case law at issue, the Court finds that Defendant's alleged intentional disruption of even a portion of the online auction through surreptitiously submitted false bids interrupted the service of that site. While the online auction was not totally thwarted, a number of individual online transactions

6

were. As such, the auction website did not provide service to either Plaintiffs or the buyers and sellers in the auction while Defendants allegedly submitted false winning bids.

Finally, Defendant raises the rule of lenity, noting that the CFAA is primarily a criminal statute. However, the rule of lenity only applies in the face of a "grievous ambiguity or uncertainty." *Barber v. Thomas*, 130 S.Ct. 2499, 2511 (2010) (internal quotation marks omitted). Because Defendant allegedly falsified its identity to access the auction website and intentionally disrupted the operation of that website, the Court finds no grievous ambiguity or uncertainty. It is clear that Defendant's alleged actions were illicit, even if whether and how they were illegal is not.

### IV. CONCLUSION

For the reasons discussed herein, Defendant's Motion to Dismiss (Doc. No. 23) is hereby denied.

IT IS SO ORDERED.

              s/ *David A. Katz*
              DAVID A. KATZ
              U. S. DISTRICT JUDGE