IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

YODER & FREY AUCTIONEERS, INC., et al.,

        Plaintiff,       Case No. 3:10 CV 1590

 -vs-

                    MEMORANDUM OPINION

EQUIPMENTFACTS, LLC, et al.,

        Defendant.

KATZ, J.

  Plaintiffs Yoder & Frey Auctioneers, Inc. and RealTimeBid.Com, LLC brought this action against defendant Equipmentfacts, LLC alleging Equipmentfacts used the plaintiffs' online bidding system to make a series of bids over the internet on heavy equipment for which it did not intend to pay. Before the Court now is defendant Equipmentfacts' motion *in limine* asking the Court either to dismiss all the claims or to bar Yoder & Frey and RTB from using any evidence related to the computer system because they spoliated evidence by destroying the server and software that were in place at the time of the auction. (Doc. 77.) Furthermore, and regardless of how the evidence spoliation claim is resolved, Equipmentfacts asks the Court to grant it summary judgment on just the first claim for relief: Violation of the Computer Fraud and Abuse Act arising under 18 U.S.C. § 1030. (*Id.*)

  Yoder & Frey is a heavy equipment auction company that holds an annual auction both on-site in Florida and online via an internet-based bidding site. At one time, Yoder & Frey used Equipmentfacts as a technology provider to its online system, but, in early 2008, Yoder & Frey terminated its relationship with Equipmentfacts and by the time of the February 2010 sale, RTB was providing the technology support for the online bidding. Yoder & Frey and RTB allege that during its February 2010 sale, Equipmentfacts created and accessed fictitious accounts to bid on

many items. They say Equipmentfacts ended up as the high bidder on 20 items totaling $1,212,074, and did not pay for those or receive the equipment. As evidence to show the transactions and Equipmentfacts' unique IP address, Yoder & Frey and RTB have provided some 30 million lines of text-based log files generated by the bidding software and its host server.

Equipmentfacts accuses Yoder & Frey and RTB of evidence spoliation, alleging they failed to stop their outside consultant, Richard Mavrogeanes, from destroying the actual server hardware and software as it existed in February 2010. It says this destruction denied it the chance to review the evidence and extract from it any exculpatory information. Yoder & Frey counters that it has preserved and produced all the relevant evidence, primarily its log files.

## I. JURISDICTION

Yoder & Frey brought this action alleging Equipmentfacts violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, so the Court has federal question jurisdiction. 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claims because, as alleged, they are so related to the federal question claim that they form part of the same case and controversy. 28 U.S.C. § 1367

## II. SPOLIATION OF EVIDENCE

"A party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Beaven v. U.S. Dept. of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (quotation omitted).

For these purposes, the first and third *Beaven* elements merge because Yoder & Frey's and RTB's obligation to preserve the server and its software is only created where those would be relevant evidence to Equipmentfacts' claims or defenses. Equipmentfacts has not demonstrated the relevance of the server system persevered in its February 2010 running state. It says: "Only an examination of the RTB software and contemporaneously generated usage data could possibly provide [evidence that Equipmentfacts both accessed the RTB system and placed specific bids.]" (Memorandum, Doc. 77-1 at 24.) Yet, the record does not reflect this at all; Yoder & Frey has provided evidence of the system's access and the bid placement without the live running system. Equipmentfacts employee Marlene Greene testified that after Yoder & Frey terminated Equipmentfacts' services, she registered to be an online bidder at Yoder & Frey's February 2010 using the name and banking information of an equipment buyer she had encountered when Equipmentfacts was Yoder & Frey's vendor (but without that buyer's consent). (Greene Dep., Doc. 78-3 at 471, 475.) Equipmentfacts owner Larry Garafola testified that during that same time, he logged in with both an old administrative account and various equipment buyers' accounts (but only after those buyers shared their information with him) to ascertain whether the new system was having technical difficulties. (Garafola Dep., Doc. 78-3 at 423.) Yoder & Frey controller Dante Pletcher testified that the system recorded the IP address of the winning bidders and they traced that address to Equipmentfacts. (Pletcher Dep., Doc. 78-3 at 236, 252.) In sum, Equipmentfacts' statement that Yoder & Frey lacks evidence on its claims without the live running 2010 system is without merit.

Equipmentfacts also says that the system is essential to its defenses (against the allegation that it broke in, in digital terms, to the system), "including whether the software and hardware

3

worked correctly, produced reliable data, was inappropriately accessed by a third party, or simply analyzed incorrectly by Plaintiffs." (Reply, Doc. 79 at 6.) The plaintiffs having produced some documented evidence of a break in, the Court will not now sanction Yoder & Frey and RTB for not preserving the system so that Equipmentfacts might test whether the locks work. *John B. v. Goetz*, 531 F.3d 448, 459-60 (6th Cir. 2008) (reversing a district court's order to make a forensic image backup of a running computer, noting: "Civil litigation should not be approached as if information systems were crime scenes that justify forensic investigation at every opportunity to identify and preserve every detail." *Id.* (quotation omitted)).

Because Equipmentfacts has not shown that the hardware and software running at the time of the 2010 auction is evidence relevant to either Yoder & Frey's claims or its defenses, the Court will not sanction the plaintiffs for not preserving the server and its software.

### III. SUMMARY JUDGMENT

Equipmentfacts' request for dismissal of claims or summary judgment predicated on the Court's granting of the motion *in limine* is moot, but Equipmentfacts also asks the Court to grant summary judgment just as to the first claim (violation of the Computer Fraud and Abuse Act), saying Yoder & Frey cannot prove sufficient damages.

### A. STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of, "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

4

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotations omitted). Once the movant meets this burden, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The Court must enter summary judgment, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Thus, the Court reviews the evidence and draws all inferences in the light most favorable to the nonmoving party. *Dixon v. Univ. of Toledo*, 702 F.3d 269, 273 (6th Cir. 2012).

B. ANALYSIS

Equipmentfacts contends that even if it did improperly bid on items, its winning bids did not render the system inoperable or stop others from bidding, so Yoder & Frey cannot show a loss. (Memorandum, Doc. 77-1 at 31 ("The accident of fate that resulted in Equipmentfacts's alleged bid being the last in time did not render the RTB computer system inoperable.").) Under the CFAA, "the term 'loss' means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030.

5

Whether the alleged action left the system inoperable is too narrow a reading of the statute. An auction's high bidder, by definition, denies the other bidders the right to purchase that item at their bid price. *See generally Blossom v. Milwaukee & C.R. Co.*, 70 U.S. 196, 206 (1865) ("But as soon as the hammer is struck down, . . . the bargain is considered as concluded, and the seller has no right afterwards to accept a higher bid nor the buyer to withdraw from the contract."). Fake bids deny the entire sale to both the auctioneer and the other bidders; particularly so when the auctioneer cannot discover the falsity of the high bid until the sale is long over. Depriving a business of potential sales is a loss contemplated by the CFAA. *E.g.*, *United States v. Schuster*, 467 F.3d 614, 617 (7th Cir. 2006) (Affirming a restitution finding that the defendant was liable for the victim's loss of business productivity because he caused a computer attack that rendered the victim's system less available to customers). Equipmentfacts also asserts that Yoder & Frey's revenue is only two percent of the sales price, but it provides no legal support that "revenue lost" for purposes of CFAA is other than gross revenue. Furthermore, two percent of the alleged $1,212,074 loss is $24,241.48, which exceeds the statutory threshold. § 1030(c)(4)(A)(i)(I). The Court need not delve further into this analysis; Yoder & Frey has pointed to some evidence that Equipmentfacts logged into its bidding computers under false pretenses, that it bid without intending to pay, and that Yoder & Frey endured some measure of loss that exceeds the threshold. Yoder & Frey survives summary judgment on this point.

## IV. CONCLUSION

The Court denies Equipmentfacts motion *in limine* and motion for summary judgment in its entirety. (Doc. 77.)

IT IS SO ORDERED.

        s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE