IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

YODER & FREY AUCTIONEERS, INC.,

                Plaintiff,         Case No. 3:10 CV 1590

-vs-

                                      MEMORANDUM OPINION
EQUIPMENTFACTS, LLC,                     AND ORDER

                Defendant.

KATZ, J.

Both sides in this case have filed memoranda regarding choice of law. The Court enters this memorandum opinion to preliminarily establish choice of law based on what the Court expects the evidence to show. The actual evidence entered may change these analyses and the Court will reconsider this ruling as necessary.

Four claims and one counterclaim remain for trial:

**Plaintiffs' Claims**

The plaintiffs originally brought three claims in a complaint filed in the Northern District of Ohio. They subsequently amended the complaint to include a fourth claim.

**1.    Computer Fraud and Abuse Act (18 U.S.C. § 1030)**

This is a federal statute; federal law applies.

**2.    Fraud**

Because the plaintiffs brought their claims in this Northern District of Ohio Court, the Court applies Ohio's choice of law analysis. *Muncie Power Prods., Inc. v. United Techs. Auto. Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). Ohio has adopted the Restatement on the Conflict of Laws, *Morgan v. Biro Mfg. Co., Inc.*, 474 N.E.2d 286, 288 (Ohio 1984). Section 148, item 2 specifically addresses fraud:

>   (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
>   (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>   (b) the place where the plaintiff received the representations,
>   (c) the place where the defendant made the representations,
>   (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
>   (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>   (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148 (1971).

Regarding 2(a): The defendant allegedly placed the false bids from his business location in New Jersey, but the plaintiffs say they received those at their auction site in Florida. The plaintiffs say that their auction was a live auction in Florida and an employee with a computer sat close to the auctioneer as he sells. When an online bid was received, that employee communicated the bid to the live auctioneer who accepted it as part of the live sale. The reliance on the bid, therefore, happened on the sale site in Florida. This is in contrast to most online auctions where the bid is received by the computer; here, the computer may have transmitted the bid, but it was relied upon by the live auctioneer in Florida.

Regarding 2(b): the point of receipt of the information was also in Florida.

Regarding 2(c): the defendant made the representations by placing the false bids from his computer in New Jersey.

Regarding 2(d): plaintiff Yoder & Frey is an Ohio corporation and plaintiff RealTimeBid.com, LLC is a limited liability company that appears to only have one member and

that sole member appears to be a resident of Michigan. Defendant EquipmentFacts, LLC is a limited liability company that appears to have only one member and that sole member appears to be a resident of New Jersey.

Regarding 2(e): the heavy equipment on which the bids were placed may have been entirely in Florida or may have been mostly in Florida, but with some scattered around the country. The plaintiffs have not said where these 18 items are, but they did say that, in their auction, most items are on site but some are (possibly because of size and logistics) not brought to Florida.

Regarding 2(f): assuming that the plaintiff would have performed by delivering possession of the equipment to the winning bidder, performance would likely have occurred in Florida. However, since most of plaintiffs' employees return to Ohio after the Florida sale, they may have transmitted keys or title to the items from Ohio. Assuming the item sat in Florida (there is no indication the plaintiffs moved the items after the sale), the plaintiffs' performance could be said to occur in Florida and possibly also have an Ohio component.

As the Court presently expects the evidence to demonstrate, Florida law applies to the fraud claim on the facts thus far presented. The restatement puts the heaviest weight on where the representation was received, where the plaintiff relied on the representation, and where the plaintiff would have performed. The notes also say: "If any two of the above-mentioned contacts, apart from the defendant's domicil, state of incorporation or place of business, are located wholly in a single state, this will usually be the state of the applicable law with respect to most issues." *Id.* at § 148, Notes. That applies here; defendant sent the statements to Florida, plaintiffs received

3

them in Florida, relied on them in Florida, and very likely would have performed on the contract in Florida. Florida law applies to this claim.

3. **Trespass to Chattels**

Conflict of Laws Restatement Section 147 deals with injuries to tangible things:

In an action for an injury to land or other tangible thing, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence, the thing and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 147 (1971)

The plaintiffs allege that the defendant trespassed on their chattel when its employees used credentials to make unauthorized access to their computer bidding system. They allege that the defendant used the an administrator account and the credentials of a regular auction buyer, both of which it had access to, having formerly been a technology vendor utilized by the plaintiff Yoder & Frey. Even though the auction was occurring in Florida, and one of plaintiff's employees was in Florida with a computer accepting the bids from the online system, the actual bidding system appears to have been housed in a server in Connecticut. It is the Connecticut system that the defendants allegedly entered, and the Restatement puts a strong presumption on the locus of the injury to the property.

In the amended complaint, the plaintiff is not explicit about how the injury occurred for this claim. If, as a direct result of the trespass, the computer system itself was otherwise unavailable (such as when someone hacks a computer and takes it down), then the injury clearly happened in Connecticut. (And, if the auction happened entirely in the computer (such as it does with online auction companies), this would arguably be the case.) However, since the computer is

4

more of a conduit to the live auction, the evidence may show that the only injury occurred in Florida, even though the property trespassed upon was in Connecticut.

However, generally, the injury for a trespass action needs to be based on the trespass, not on another tort (fraud) committed after the trespass. *E.g.*, *Intel Corp. v. Hamidi*, 1353, 71 P.3d 296, 304 (Cal. 2003) ("The cited line of decisions does not persuade us that the mere sending of electronic communications that assertedly cause injury only because of their contents constitutes an actionable trespass to a computer system through which the messages are transmitted. Rather, the decisions finding electronic contact to be a trespass to computer systems have generally involved some actual or threatened interference with the computers' functioning."). So, the injury focus should be exclusively on whether the computer system itself was injured by the intrusion, and that leaves the choice of law where that injury (if any) happened.

In sum, the key to this determination is where the injury to property occurred. And, because showing an injury to the Florida (or Ohio) operations based on the intrusion on the Connecticut server would probably extend trespass to chattels too far, it will be a question of whether the plaintiffs can show an injury to the computer system (the property) arising from the defendant's entry on it; the evidence will either demonstrate no injury or will lead to the application of Connecticut law.

**4.      Breach of Contract**

5

Plaintiffs assert that its bidders enter into a contract to purchase goods when they place a bid—online or in person—and that defendant breached that contract after placing bids and not performing on those. Section 191 of the Restatement addresses questions of contract:

> The validity of a contract for the sale of an interest in a chattel and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where under the terms of the contract the seller is to deliver the chattel unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 191 (1971).

The plaintiffs make no mention of a choice of law provision in a written contract (such as by clicking on an agreement before being allowed to bid). Should evidence of the contract containing a choice of law provision come out at trial, it will likely control this question.

Barring a choice of law contract provision (and, as discussed in the fraud section) the Court turns to the location of the chattel first. Most of this auction's items are in Florida, but some are not moved to Florida and may be in a variety of states. Therefore, it is likely that the seller was to physically deliver the goods in Florida after the auction. However, the evidence may show a delivery from another state. Furthermore, the evidence may show that certain after-sale transactions where handled in Ohio (although, "greater weight will usually be given to the location of the chattel . . . at the time of conveyance" than the associated paperwork. Restatement § 244(2).).

If the property was not in Florida or if it was in Florida, but the transaction's paperwork would have been completed in Ohio and sent to the buyer, Florida's law should still apply because it has a more significant relationship under the § 6 principles. Florida hosted the auction and licensed the auctioneers. While in Florida, the auctioneers were bound by Florida law in how they

6

conducted the sale. Therefore, Florida has a greater interest in the execution of the contracts that result from those auction sales and the Court will apply Florida law.

**Defendant's counterclaim**

**1.      Defamation**

Defendant says that Florida law should apply to the defamation counterclaim and plaintiffs do not disagree.

The Court applies New Jersey's law on the choice of law because the counterclaim was first filed as an original action in New Jersey by the defendant against the plaintiffs. *Polydyne, Inc. v. Kirk*, 238 F.3d 423 (6th Cir. 2000) (unpublished table case). New Jersey has also adopted the Restatement on Conflict of Laws, however. *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008). Section 149:

> In an action for defamation, the local law of the state where the publication occurs determines the rights and liabilities of the parties, except as stated in § 150, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 149 (1971).

The defendant alleges that the plaintiff made comments at the auction the following year to the attendees of the next auction. That auction took place in Florida and this leads to a presumption that Florida law applies. Next, the Court must also examine whether another state has a more significant relationship to the claim using the principles in § 145(2):

(a)     the place where the injury occurred,
(b)     the place where the conduct causing the injury occurred,
(c)     the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d)     the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145 (1971).

These continue to point to Florida, however. The alleged injury is to the defendant's business reputation. While the defendant may feel that injury in New Jersey because it is located there, the injury occurred in Florida when the defendant's potential customers heard the defamatory statements there. Additionally, the conduct (making the comments) occurred in Florida. Yoder & Frey and two of the individual counterclaim defendants are domiciled in Ohio, RealTimeBid.com, LLC and Justin Clark are domiciled in Michigan, and John Sokoloski, Sr. is domiciled in Texas. The defendant is domiciled in New Jersey. Since domicile is a consideration, but typically does not carry more weight than the locus of the defamation, it does not change the analysis. The location of the parties' previous relationship is unclear; the evidence may show it was centered in Ohio, New Jersey, Florida, or that it was exclusively online with each party in its own location.

Because the place where the injury occurred and the place where the conduct occurred are both in Florida, and because the domicile of the parties and the location of their relationship provide no clear argument for using another state's law, Florida law applies to this claim.

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE