IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

YODER & FREY AUCTIONEERS, INC., et al.,

       Plaintiff,    Case No. 3:10 CV 1590

 -vs-

               MEMORANDUM OPINION
EQUIPMENTFACTS, LLC, et al.,     AND ORDER

       Defendant.

KATZ, J.

  In August 2013, the Court conducted a five-day jury trial in this matter that ended with a verdict in favor of plaintiffs Yoder & Frey Auctioneers, Inc. and RealTimeBid.Com, LLC and against defendant EquipmentFacts, LLC. The jury found in favor of the plaintiffs on all four claims (violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; fraud; trespass to chattels; and breach of contract) but awarded damages only on the CFAA and contract claims. (Verdict, Doc. 125.) The jury also found in favor of the plaintiffs and four other counterclaim defendants and against EquipmentFacts on EquipmentFacts' defamation counterclaim. (Verdict, Doc. 126.)

  Two motions are now before the Court: Yoder & Frey and RTB's joint motion for sanctions and EquipmentFacts' motion for judgment notwithstanding the verdict. (Docs. 131, 132.)

**Motion for Judgment as a Matter of Law, Notwithstanding the Jury Verdict**

  EquipmentFacts raises five issues and asks the Court to find in its favor on these and overturn the jury verdict against it. In evaluating a Rule 50(b) motion, the Court cannot supplant its judgment for the jury's and only tests whether a reasonable juror, relying on the evidence introduced at trial, could find for the plaintiffs on each element of their claim. *Szekeres v. CSX*

*Transp., Inc.*, 731 F.3d 592, 597 (6th Cir. 2013). The Court may neither weigh the evidence nor pass on the credibility of witnesses, and must draw all reasonable inferences in favor of the nonmoving party. *Id.* "The Rule 50(b) motion should be granted only if 'reasonable minds could not come to a conclusion other than one favoring the movant.'" *Id.* (quoting *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 531 (6th Cir. 2005)).

EquipmentFacts premises several of its theories for judgment on questioning evidentiary rulings. That is, it says the Court should not have admitted certain evidence and, without the evidence admitted in error, the plaintiffs would have no evidence as to a certain element. A motion for a new trial under Rule 59 is the more traditional vehicle for revisiting evidentiary rulings, *e.g.*, *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 727 (6th Cir. 1994), but the difference in standards of review is immaterial in this context since both analyses begin with determining whether the evidentiary rulings were in error.

**Spoliation**

Prior to trial, EquipmentFacts moved *in limine* to exclude log-file evidence generated by RTB's computer system because RTB had not preserved a running image of its system or the hardware on which it ran. The Court considered whether this amounted to spoliation of evidence and determined it did not; RTB had no obligation to protect the live running system (by image or by saving the hardware) because those were not essential to their claims or EquipmentFacts' defenses. (Doc. 80.) "The plaintiffs having produced some documented evidence of a break in, the Court will not now sanction Yoder & Frey and RTB for not preserving the system so that Equipmentfacts might test whether the locks work." (*Id.* at 4.) At EquipmentFacts' behest, the Court reconsidered the question, but still concluded: "if EquipmentFacts used its analysis of the

2

running system to determine that the system was prone to keep inaccurate records, that may bolster its case. Nevertheless, this does not meet the standard to show spoliation. EquipmentFacts needed to show that what it would discover was actually relevant, not just that it may have found relevant material if it uncovered a defect in the plaintiffs' software system." (Doc. 86.)

In its current motion, EquipmentFacts rehashes its argument and supplements it with more case law. Nevertheless, it does not overcome the hurdle of showing that the system itself was relevant. The Court continues to agree that if RTB had provided an image to EquipmentFacts and if EquipmentFacts had found RTB's running system improperly recorded log files, this evidence would be relevant to EquipmentFacts' defense. The mere possibility of relevance, however, does not raise this to a spoliation claim.

The Court agrees that *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001), is instructive but also finds it highly distinguishable. The Fourth Circuit upheld a dismissal because the plaintiff failed to preserve the automobile he claimed was defective and caused an accident. Unlike the plaintiff in *Silvestri*, Yoder & Frey and RTB did not bring this claim against EquipmentFacts because the auction computer system was defective; they brought it accusing EquipmentFacts of entering the system and placing false bids. The automobile in *Silvestri* was the alleged cause of the harm; the computer system in this case, however, did not cause the alleged harm, it merely recorded it by producing the log files. *Silvestri*'s sharp language about preserving the object at the heart of the litigation is, therefore, inapposite.

In spite of providing new argument and case citations, EquipmentFacts has provided nothing that alters the Court's position that the plaintiffs were not obligated to retain the running system or an imaged copy of it. The log files the system generated are evidence of the "break-in,"

and litigants remain free to call jurors' attention to the lack of a preserved system and suggest jurors should doubt the reliability of the evidence the missing system produced (just as EquipmentFacts did). Nevertheless, the Court will not begin imposing a duty on litigants to preserve the hardware and software just so that they might be tested to see if they flawlessly record evidence of break-ins. EquipmentFacts' first argument for judgment notwithstanding the verdict depends on a finding of spoliation and an exclusion of evidence as a penalty for spoliation; having found no spoliation, the Court denies judgment on this point.

**Hearsay**

At trial, the plaintiffs provided evidence from four Internet Service Providers showing EquipmentFacts leased certain IP addresses at certain times. The plaintiffs issued subpoenas to the ISPs inquiring who leased the addresses in question, then obtained the testimony of a representative from each company (three by deposition and one at trial) to establish the authenticity of each record. EquipmentFacts moved to exclude the ISPs' testimony and records, asserting they were hearsay not within the business records exception. (EquipmentFacts moved *in limine* as to three ISPs, (Doc. 104), which the Court denied except as to one summary letter, (Doc. 120), and moved at trial as to all four ISPs, which the Court denied.) EquipmentFacts now rehashes its earlier position but also analyzes the testimony of three of the representatives and illuminates what it believes are shortcomings:

On cross-examination, Covad's representative acknowledged he could not answer whether the IP address record information was "recorded contemporaneously with the events described in the document." (Lucero Dep., Doc. 115 at 17.) Nevertheless, minutes earlier on direct examination, he had agreed that "[t]he information that's contained on [the report] was

4

information that was recorded at or about the time that the record was made." (*Id.* at 9.) He also allowed that he was neither aware of "how Covad records or logs information pertaining to a particular IP address" or why they keep this information. (*Id.* at 17–18.) But, on direct he had agreed that "the records that are in Exhibit 2 are kept in the normal course of regularly conducted activity of Covad Megapath." (*Id.* at 7–8.) In short, the witness met the necessary elements to establish the hearsay exception for the records, but EquipmentFacts' cross-examination cast some doubt on how deep the representative's knowledge went.

Century Link's representative also did not know how the records database was created and, therefore, whether "information gets put into that AUP database or the database that AUP uses to associate IP addresses to subscribers contemporaneously with the use of the IP address." (Day, Dep., Tr. at 394, 399–401.) Nevertheless, the witness had agreed on direct examination that the records Century Link provided "contain information that was made at the time that information was transmitted." (*Id.* at 375; *see also id.* at 381 (agreeing the exhibit itself was based on records produced in February 2010).) Once again, the witness presented testimony necessary to establish the elements and the cross examination called the representative's role in the process into question without undoing the foundation.

Likewise, with Verizon's witness, EquipmentFacts argues the witness' admitted lack of knowledge about how the database populates information means the witness does not know if the information was recorded contemporaneously with the occurrence. (Looney Dep., Doc. 113 at 23.)

Finally, since the trial transcript was not available at the time it drafted its motion, EquipmentFacts makes a general—and similar—objection to Verizon Wireless' witness. The Court has reviewed the trial transcript and found the exact same situation: on direct, the witness

5

laid the proper foundation to admit the documents. On cross, EquipmentFacts elicited the fact that the witness was a custodian of records for Verizon Wireless and was unfamiliar with complex inner workings of the recording system.

The Court heard each witness discuss his or her knowledge of the record keeping process on direct examination and heard the limits of each witness' knowledge tested on cross-examination. In each of the four instances, the Court then admitted the report under the business records exception. While EquipmentFacts differs regarding which testimony the Court should credit, it has not shown error in admitting the reports; each decision is supported by the record and EquipmentFacts has not met the burden of showing the Court should overturn it. The Court denies the motion for judgment stemming from EquipmentFacts' argument on these evidentiary rulings.

**Exhibit 17**

The plaintiffs say they took 30 million lines of text-based log files and, from that, created a 271-page document, marked Exhibit 17, that contained only relevant log entries. Justin Clark then used this document to testify about the content of the otherwise unwieldy log files. (Tr. at 87 *et seq.*) Over EquipmentFacts' objection, the Court admitted Exhibit 17. (Tr. at 550–51.)

EquipmentFacts first claims the summary is inadmissible because the Court should have barred admission of the underlying log file due to spoliation. *See United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998) (summaries of inadmissible documents are not admissible). The Court addressed spoliation *supra*, and continues to find none, which terminates this argument.

EquipmentFacts also contends Exhibit 17 was inadmissible under the rule allowing summaries of large documents since it contained not only excerpts from the log files, but also highlighting and text coloring. "[T]he information on the summary [must not be] embellished by

6

or annotated with the conclusions of or inferences drawn by the proponent, whether in the form of labels, captions, highlighting techniques, or otherwise." *Id.* at 1110. Exhibit 17, however, was not a summary; it was a series of excerpts. A summary might provide (in text or chart form) a total number of times a certain IP address made a certain request of the web server. Exhibit 17 did not do that; it lists every request and response made by certain IP addresses but eliminates traffic from other IP addresses. This is not a summary, it is a series of excerpts compiled onto one document. Excerpts are permitted under Rule 106 as long as the other party had an opportunity to introduce the entire document for context (which EquipmentFacts did not request). Furthermore, the Court can find no ban on highlighting excerpts (which essentially amounts to excerpting excerpts). And, even were the practice disfavored, the highlighting in this document only draws attention to certain entries and does not itself embellish or draw attention to the proponent's conclusion (which is what *Bray* proscribes). Therefore, the Court properly admitted Exhibit 17 and now denies EquipmentFacts judgment on its theory of improper admission of this exhibit.

**Evidence of Each Bid Placed**

EquipmentFacts claims that, in the case of all but one of the false bids, the plaintiffs did not produce any evidence correlating the false bid to EquipmentFacts' IP address. The plaintiffs requested, by subpoena, the owner of certain IP addresses in 17 specific windows of time spread over five days. They also claim 18 false bids occurred over two days. EquipmentFacts argues the times requested by subpoena only correlate with the time of a false bid in one instance and the Court should find the plaintiffs presented no evidence from which the jury could find it was connected to RTB's system when 17 of the false bids were placed. EquipmentFacts raised this

7

issue in a motion *in limine* and provided two helpful charts correlating the times of the bids and the times of the subpoenas. (Doc. 102.) The Court denied the motion. (Doc. 120.)

The jury heard testimony and considered log file exhibits that purported to show the IP addresses of whoever placed the false bids. The jurors heard from four ISP representatives who identified the lessee of the IP addresses as EquipmentFacts (although not at times that precisely correlated with the false bids, which is at issue here). They also heard the plaintiffs received bids that turned out to be false from their long-time customer Allied Erecting, then heard EquipmentFacts' employee Marlene Greene testify she created an account using Allied Erecting's credentials. Finally, the jurors heard EquipmentFacts' owner Larry Garafola admit he used administrative credentials to log into the system during the auction.

Having heard of Ms. Greene's and Mr. Garafola's entries into the system, of Ms. Greene's admission that she created an Allied Erecting account, of the false bids from Allied Erecting, of the ISP records showing an EquipmentFacts connection at the time of one false bid, and of the ISP records showing EquipmentFacts connected multiple times in the days prior to the false bids, the jurors had sufficient evidence to conclude that entry into the system at times near, but not precisely correlated with, the false bids was evidence showing EquipmentFacts placed the bids. The Court will not overturn this verdict.

**Loss under the CFAA**

EquipmentFacts asserts the plaintiffs did not produce evidence of more than $5,000 in loss due to an interruption in service. *See* 18 U.S.C. § 1030(c)(4)(A)(i)(I), § 1030(g). "[T]he term 'loss' means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its

condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* at § 1030(d)(11).

EquipmentFacts claims the plaintiffs introduced no evidence of an interruption of service, but its reading of the term is too restrictive. In some cases, computer hackers interrupt service by making so many requests that the system cannot respond to legitimate users' requests. This denies the system's resources to legitimate users. *E.g.*, *United States v. Raisley*, 466 F. App'x 125, 127 (3d Cir. 2012) (describing a criminal defendant's use of multiple web requests to overwhelm a news site and render its content inaccessible to other users). Even though the plaintiffs conceded EquipmentFacts' actions did not render its auction site inoperable and the site was still able to handle all other sales, its placing of false bids denied service to Yoder & Frey's other bidders. By being the high (but false) bidder on 18 items and concealing that fact until long after the auction ended, EquipmentFacts denied other bidders those slots. And, just as a large-scale denial of service attack uses web requests that appear legitimate to crowd out actual legitimate users, so did EquipmentFacts use false bids that appeared legitimate to crowd out actual legitimate bids. The plaintiffs did not need to show EquipmentFacts overwhelmed the entire system to establish an interruption in service.

The plaintiffs introduced some evidence demonstrating they were damaged and that those damages arose as "revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(d)(11). Therefore, the Court denies EquipmentFacts' motion as to this point.

**Summary**

9

EquipmentFacts has not met the burden of showing the plaintiffs lacked evidence as to a necessary element, so the Court denies the motion for judgment as a matter of law, notwithstanding the jury verdict. (Doc. 132.)

## Motion for Sanctions

The plaintiffs claim they sent requests for admissions to EquipmentFacts during discovery (*see* Fed. R. Civ. P. 36) and EquipmentFacts improperly denied five of them. They assert they proved those issues at trial and are entitled to the costs they incurred proving these matters, including attorneys' fees, as a sanction against EquipmentFacts.

> If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless:
> (A) the request was held objectionable under Rule 36(a);
> (B) the admission sought was of no substantial importance;
> (C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or
> (D) there was other good reason for the failure to admit.

Fed. R. Civ. P. 37(c)(2).

**Request for Admission 3**

Plaintiffs asked EquipmentFacts to "[a]dmit you accessed the online bidding system provided for Yoder & Frey's February, 2010 Florida auction using the user name of Allied Erecting & Dismantling, Inc. (Buyer Number 102703)." (Doc. 131-2.) The request defined "you" as "Equipmentfacts, LLC, its representatives, agents, officers, directors, and employees, including, but not limited to, Larry Garafola." (*Id.*) EquipmentFacts denied this. At trial, EquipmentFacts employee Marlene Greene admitted she created a bidding account using the name John Ramun, who owned Allied Erecting: "Q. You used John Ramun because he had been a bidder through

10

Equipmentfacts when you had provided online services for bidders like him, correct? A. Yes." (Tr. at 412.) She admitted she did this "as part of [her] work for Equipmentfacts, not for personal use," (*id.*), and that "Larry Garafola was with [her] at times when [she] entered in the February 2010 Florida auction." (*Id.* at 414.)

EquipmentFacts' owner, Larry Garafola, testified (by having his deposition read into the record) he was aware Marlene Greene used John Ramun's password: "I know she applied for a bidder number and a password using a John Ramun. I don't think the name was the complete Allied Erecting and Dismantling, but I know that she used portions of what we have in our database to obtain a bidder number." (Tr. 469.)

EquipmentFacts' owner, Mr. Garafola, knew Ms. Greene accessed the plaintiffs' system using Allied Erecting's credentials and denied it not because he believed it did not happen but because he believed Ms. Greene's actions were not attributable to his company. The question, then, is whether EquipmentFacts had reasonable grounds to believe it would prevail by convincing the jury it had no vicarious liability for Ms. Greene's actions. Fed. R. Civ. P. 37(c)(2)(C) (The court must so order unless . . . the party failing to admit had a reasonable ground to believe it might prevail on the matter.").

An employer is only liable for its employee's actions if the employee acted within the scope of employment. *Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.*, 783 So. 2d 353, 356 (Fla. Dist. Ct. App. 2001). "An employee's conduct is within the scope of his employment, where (1) the conduct is of the kind he was employed to perform, (2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) the conduct is activated at least in part by a purpose to serve the master." *Id.* at 357. Ms. Greene's job duties

11

included going to auctions, working directly with auctioneers, and working directly with bidders. (Tr. at 409.) She used a computer issued by EquipmentFacts to access the Yoder & Frey auction and did it in the presence of Mr. Garafola. (*Id.* at 410–13.) She used the Allied Erecting account to monitor the action "as part of [her] work for Equipmentfacts, not for [her] personal use." (*Id.* at 412.) EquipmentFacts has not disputed any of these points; that is, it makes no argument that it had reasonable ground to believe it could convince the jury that interacting with an auction was not the kind of work Ms. Greene performed; that Ms. Greene's conduct did not occur in the time or space limits of her work; or that she was not motivated, at least in part, by EquipmentFacts' interests.

EquipmentFacts sole claim is that Ms. Greene's conduct was against EquipmentFacts' company policy, so it could honestly deny it had accessed the plaintiffs' system using Allied Erecting's credentials. It points out that both Ms. Greene and Mr. Garafola knew Ms. Greene's use of the Allied Erecting credentials violated company policy, (Tr. at 433, 589), and says this gives it reasonable ground to believe it would prevail on this issue. (Brief, Doc. 134 at 5.) Notwithstanding Mr. Garafola's and Ms. Greene's agreement that her action violated company policy, "conduct may be within the 'scope of employment' even if it is unauthorized, if it is of the same general nature as, or sufficiently similar to, authorized conduct, taking into consideration the various factors relevant to the master-servant relationship." *Padgett v. Sch. Bd. of Escambia County*, 395 So. 2d 584, 586 (Fla. Dist. Ct. App. 1981) (citing *Lewis v. Walston & Co., Inc.*, 487 F.2d 617 (5th Cir. 1973)). In fact, as a practical matter, nearly all actionable employee conduct violates company policies; vicarious liability attaches nonetheless when the unauthorized conduct was related to the employee's duties. This was the case here.

12

Even though EquipmentFacts had no reasonable ground to believe it would prevail on this question, the Court hesitates to sanction a party for failing to admit a question that is a pillar of the case's ultimate issue. Where a party has a reasonable belief it may prevail, courts cannot make an end-run around the "American Rule" by sanctioning a party that had a reasonable belief it might prevail on the issue but did not. *But see Campbell v. Spectrum Automation Co.*, 601 F.2d 246, 253 (6th Cir. 1979) ("That a request seeks admissions on 'ultimate facts,' or is dispositive of the entire case, is irrelevant."). However, EquipmentFacts has offered no basis for it to have such a reasonable believe other than Ms. Greene's and Mr. Garafola's positions that the conduct violated company policy. To effect the principle of accurate admission responses without compromising the principle of allowing juries to decide reasonably contestable issues, the Court awards a nominal sanction of $1,000 in attorneys' fees plus costs of $1,599.29.

**Requests for Admission 10, 11, 12, and 13**

Requests 10 through 13 asked EquipmentFacts to admit that four Internet Service Provider reports detailing who leased an IP address on a given date and time were authentic records of regularly conducted business activity. *See* Fed. R. Ev. 803(6), 902(11). EquipmentFacts refused the request, saying that it was not familiar with each ISP's business records and lacked sufficient knowledge to admit or deny the request. To authenticate the records, the plaintiffs deposed three representatives (two by traveling to the witnesses and one by telephone) and brought the fourth representative to trial. EquipmentFacts moved *in limine* to bar the ISP records as hearsay not within the business records exception and the Court denied the motion except as to one ISP's summary cover letter. Over EquipmentFacts' continuing objection, the Court allowed the business records in at trial.

13

"The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36(a)(4). EquipmentFacts did not claim it made an inquiry into the records' authenticity, and relies only on its inability to know whether another company's records are authentic. The plaintiffs also point out that EquipmentFacts, which is an information technology company, could have checked the accuracy of the content of the reports by verifying what its own IP address was for those periods.

Whether EquipmentFacts used formal language in its admissions response to indicate it made a "reasonable inquiry" into the records' authenticity is of less significance than its overall argument. That is, if the Court looks beyond the language of its response and finds EquipmentFacts can show it inquired into the authenticity of the records and was left genuinely unable to determine if they were authentic, then it may have met the substance of the rule. On the other hand, if it used its response to the request to cause the plaintiffs unnecessary expense, then Rule 37 sanctions are appropriate.

At trial and in its opposition to sanctions, EquipmentFacts does not argue that it made an inquiry and only points to perceived shortcomings in the plaintiffs' authentication efforts. This leaves EquipmentFacts lacking a showing that it had "a reasonable ground to believe that it might prevail" in showing the documents lacked authenticity. Fed. R. Civ. P. 37(c)(2). Where no ground to deny exists, the Court "must so order" reasonable expenses and attorneys' fees. *Id.* The plaintiffs prevailed in showing the records' admissibility and EquipmentFacts has not

14

demonstrated an exception under Rule 37(c)(2), so the Court will order sanctions in the amount requested: $20,830.50 in attorneys' fees and $4,594.71 in expenses.

**Adjustments to Sanction Amounts**

The Court agrees with EquipmentFacts that the plaintiffs cannot be reimbursed twice, so where the plaintiffs have sought costs on their bill of costs (Doc. 130) and also have sought the same expenses in the motion for sanctions, they cannot collect on both. The Court will reduce the sanctions award by the costs on the prior-filed bill of costs ($2,145.19).

EquipmentFacts also asks the Court to reduce charges because the plaintiffs' attorneys "block billed." While block billing does reduce the ability to analyze how the time was spent, it does not *per se* make attorneys' fees unreasonable. *E.g.*, *Jablonski v. Portfolio Recovery Associates*, No. 3:11CV02291, 2012 WL 1552462 (N.D. Ohio Apr. 30, 2012). True, plaintiffs take a risk in block billing that they will not be able to show that their fees are reasonable, but EquipmentFacts took a risk in refusing to admit to matters and compelling the plaintiffs to take depositions and bring in witnesses. Furthermore, plaintiffs identify the general task (taking a deposition, preparing for a certain witnesses testimony) and this is not, by technical definition, "block billing." Ultimately, the Court must award "reasonable expenses, including attorney's fees" and EquipmentFacts has not shown the fees requested to be unreasonable.

**Summary**

The Court awards $1,000 in nominal attorneys' fees as a sanction for failing to admit to Request for Admission 3, and $1,599.29 in expenses (including travel) for taking Ms. Greene's deposition.

The Court further awards $20,830.50 in attorneys' fees as a sanction for failing to admit to Request for Admissions 10, 11, 12, and 13, and $2,449.52 ($4,594.71 less $2,145.19 that will be paid per the bill of costs) in expenses (including travel).

## Conclusion

The Court denies EquipmentFacts motion for judgment as a matter of law notwithstanding the verdict. (Doc. 132.)

The Court grants the plaintiffs' joint motion for sanctions and awards $25,879.31 as a sanction. (Doc. 131.)

IT IS SO ORDERED.

      s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE